UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:14-cv-00700-RJC

JASON VICKS
MEKEISHA VICKS

      Plaintiffs,

vs.

CFAM FINANCIAL SERVICES, LLC.

      Defendant.

**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS COMPLAINT**

COME NOW Defendant, CFAM Financial Services, LLC ("Defendant" or "CFAM"), by and through its undersigned counsel of record, and submits this Memorandum of Law in Support of its Motion to Dismiss Plaintiffs, Jason Vicks and Mekeisha Vicks ("Plaintiffs"), Complaint (the "Complaint") for failure to state a claim upon which relief may be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## INTRODUCTORY STATEMENT

Plaintiffs' Complaint in this matter is reminiscent of the old political saying "[e]veryone is entitled to [their] own opinion, but not [their] own facts." While it is to be expected that Plaintiffs would draft a Complaint in which objective facts would be asserted in favor of their own claims, this particular Complaint blatantly ignores undisputed facts that occurred, does not cite facts from the public record which this Court should take judicial notice, and relies on conclusory statements that are unsupported by averments of facts to make a claim against Defendant CFAM. Although Plaintiffs do attach documents to the Complaint, they conveniently leaves out other documents that would defeat their claim.

Plaintiffs seek damages for violations of the Fair Debt Collection Practices Act (FDCPA), the North Carolina Debt Collection Act (NCDCA), the North Carolina Unfair and

Deceptive Trade Practices Act ("NCUDTPA") and "Noncompliance with Repossession of Vehicle Without A Security Interest." In 2007, Plaintiffs obtained a loan from Parks Automotive, Inc. to purchase a Hummer H2. Yet more than seven years later, Plaintiffs still had not paid off the loan and were in default. Yet, in an almost dissociative manner, Plaintiffs deny that they have any knowledge of a debt owed to Defendant. They do this despite orders that are in the public record that hold, as a matter of law, there is a valid debt in the form of a promissory note, they are the Debtors under that promissory note, and the Defendant is the holder of the promissory note.

The Vicks, *pro se* Plaintiffs, are entitled to some leeway in their pleadings. However, their conclusory statements in the Complaint and the public record make this lawsuit nonsensical. This lawsuit must be dismissed as a matter of law.

## STATEMENT OF THE CASE

This action was instituted by Plaintiffs on December 17, 2014, seeking damages arising out of the eventual repossession and sale of a 2003 Hummer H2. Plaintiffs defaulted on payments made under a loan made by Parks Automotive, Inc. in 2007 to purchase the Hummer. Complaint (Compl.) Ex. A. The promissory note was transferred to Wells Fargo shortly after the origination of the loan. Compl. pp. 3-4, Ex. A.[1] In 2012, Wells Fargo, transferred the Note to Defendant CFAM. Eventually, the Hummer H2 was repossessed and sold. Compl. p. 7. In 2012, Plaintiff, Jason Vicks filed for Bankruptcy Protection. In that Bankruptcy, CFAM made a Notice of Claim regarding the Hummer. Plaintiff, Jason Vicks, who was represented by counsel

---

[1] There are several numbering issues in the Plaintiffs' Complaint such that citations to the Complaint by paragraph number cannot be done without confusion. Thus, citations to the Complaint will be done by page number.

did not dispute CFAM's claim in the Bankruptcy.[2] In fact, a CFAM obtained a distribution of proceeds from the 2012 bankruptcy. In 2014, Plaintiff, Jason Vicks filed for bankruptcy again. This time, Plaintiff, Jason Vicks attempted to assert that CFAM did not have a lien on the Hummer. The Court dismissed Jason Vicks attempt to avoid CFAM's lien.

The premise of all of Plaintiffs' claims is that CFAM repossessed their car when it did not have the right to do so. However, as Defendant amply demonstrates, Plaintiffs have not alleged that CFAM is liable to them under any of their claims.

## STATEMENT OF FACTS

**A.    Request For Court To Take Judicial Notice**

In order to incorporate other essential facts in this matter not contained in the Complaint, CFAM requests the Court take judicial notice of matters of public record. CFAM requests this Court take judicial notice of two bankruptcy proceedings that were before the Western District of North Carolina. The first proceeding is Bankruptcy Case No. 3:12-bk-32648 and the second Bankruptcy Case No. 3:14-bk-30679. In both cases, the Debtor in the bankruptcy proceeding was only, Plaintiff, Jason Vicks and both were Chapter 13 actions. Pursuant to Fed. R. Evid. 201(c), the Court "must take judicial notice if a party requests it" or "if the court is supplied with necessary information." *Philips v. Pitt Cnty. Mem'l Hosp.,* 572 F.3d 176, 180 (4th Cir. 2009) ("In reviewing a Rule 12(b)(6) dismissal, [the Court] may properly take judicial notice of matters of public record."); *Johnson v. BAC Home Loans Servicing, LP*, 867 F. Supp. 2d 766, 778 (E.D.N.C. 2011) (court taking judicial notice of the special proceedings filings by Defendants in a non-judicial foreclosure in considering a motion to dismiss under Rule 12(b)(6).

---

[2] Jason Vicks was represented in his Bankruptcy by David Hands, husband of Mecklenburg County District Judge Ty Hands.

**B.      Execution of Note**

Plaintiffs executed a promissory note ("Note") in favor of Parks Automotive, Inc. dba Parks Suzuki evidencing a loan used to purchase a 2003 Hummer H2 on April 23, 2007. The principal amount of the Note was $36,943.00 in favor of Parks Automotive, Inc. dba Parks Suzuki. **Note attached as Exhibit A.[3]** The Note called for 66 monthly payments of $812.17 beginning on May 23, 2007. *Id.* In paragraph 2(c) of page 2 of the Note, the Plaintiffs gave the Hummer H2 itself as collateral for the loan. *Id.* In paragraph 3(d) of page 2 of the Note, Parks Automotive, Inc. dba Parks Suzuki gave the Plaintiffs notice that if they defaulted on the loan, the Hummer H2 may be repossessed. *Id.*

**C.      Plaintiffs Default On Their Car Payments**

Parks Automotive, Inc. dba Parks Suzuki assigned the Note to Wells Fargo. Compl. p. 3.[4] On or about May 21, 2007, Wells Fargo recorded its lien with the North Carolina Department of Motor Vehicles. Compl. Ex. A. Plaintiffs admit that they later defaulted on the Note. Compl. ¶16. Plaintiffs further admit that Wells Fargo transferred the Note to Defendant CFAM on June 12, 2012. Compl. p. 4. Finally, Plaintiffs admit that from 2012 to 2014, they made payments to CFAM on the Note. Compl. p. 4.

**D.      Jason Vicks First Bankruptcy**

What Plaintiffs do not admit, but what is part of the public record, was that on June 26, 2012 Jason Vicks filed a Chapter 13 Bankruptcy with the Western District of North Carolina. *See In re Vicks,* Bankruptcy Case No. 3:12-bk-32648 (2012) ("First Bankruptcy"). On January 4

---

[3] Plaintiffs attach only the first page of the Note in his Complaint. Exhibit A to this Motion attaches the entirety of the Note. In addition to the allegations in the Complaint, "a court may consider 'documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.'" *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448 (4th Cir. 2011).

2013, CFAM made an appearance and request for notice in the proceeding. *See* First Bankruptcy, Dkt. Entry 15. On February 22, 2013, CFAM filed a notice of claim with the bankruptcy Court. On March 19, 2013 the notice of claim was amended to correct the creditor address. **Notice of Claim attached as Exhibit B.** The Notice of Claim included, a copy of the Note, the Certificate of Title, a Payment History, a Limited Power of Attorney, and a Bill of Sale. *Id.* Jason Vicks counsel made no objection to CFAM claiming an interest in the Hummer H2. On February 15, 2013, the Court confirmed a Chapter 13 Plan in which Jason Vicks would pay $3,250/month to pay off his creditors. First Bankruptcy, Dkt. 26. On April 12, 2013, the Bankruptcy Court dismissed the petition. *Id.*, Dkt. Entry 30. The reason for the dismissal was due to the Trustee's objection to the Chapter 13 Plan based on Jason Vicks' failure to file is 2010 and 2011 income taxes. *Id.*, Dkt. Entry 29. Before the First Bankruptcy was dismissed, Jason Vicks paid $3,350 to the Trustee of the bankruptcy estate. *Id.*, Dkt. Entry 32. Of that amount, $2,471.10 was paid to CFAM. *Id.*

**E.      Jason Vicks Second Bankruptcy**

On April 23, 2014, Jason Vicks filed another Chapter 13 bankruptcy in the Western District of North Carolina. *See In re Vicks,* Bankruptcy Case No. 3:14-bk-30679 (2014) ("Second Bankruptcy"). In this bankruptcy, Jason Vicks proceeded *pro-se*. On July 8, 2014, CFAM made an appearance and request for notice in the proceeding. *See* Second Bankruptcy, Dkt. Entry 23. On that same date, CFAM made an objection to Jason Vicks bankruptcy plan because "[his Chapter 13] plan proposes to avoid CFAM's lien, without giving any explanation as to why the lien is voidable." *Id.*, Dkt. Entry 24. Jason Vicks responded to this objection by alleging that Wells Fargo had charged off his loan on his credit reports and CFAM was not registered as a debt collector under North Carolina law. *Id.*, Dkt. Entry 26 **attached as Exhibit**

5

**C.** On August 18, 2014, the Bankruptcy Court sustained CFAM's objection to the Chapter 13 plan. *Id*., Dkt. Entry 33 **attached as Exhibit D**. On November 11, 2014, Jason Vicks second bankruptcy was dismissed.

**F.     The Hummer H2 Is Repossessed**

On November 5, 2014, CFAM obtained a license from the North Carolina Department of Insurance to become a debt collector in the state. Compl. p. 4. On November 7, CFAM repossessed the Hummer H2 after an unsuccessful attempt on November 6. Compl. p. 4-5. On November 10, 2014, CFAM sent Jason Vicks a letter providing him 30 days to dispute the debt. Compl. p. 5-6. On November 11, 2014, CFAM sent him another letter informing him of CFAM's intent to sell the Hummer H2. Compl. p. 7. On November 12, 2014, Jason Vicks received another letter from CFAM informing of his right to redeem the Hummer H2. *Id*. On November 15, 2014, Plaintiffs allege that he sent a verification request into CFAM. *Id*. On November 25, 2014, Plaintiffs allege that he received confirmation from the North Carolina Department of Insurance that CFAM has retained a debt collector's license. Compl. *Id*.

## STANDARD OF REVIEW

The Complaint should be dismissed for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A motion to dismiss pursuant to Rule 12(b)(6) should be granted if it appears that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief. *Edwards v. City of Goldsboro,* 178 F.3d 231, 244 (4th Cir. 1999). Ordinarily, the complaint need contain simply "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, a complaint is insufficient if it offers merely "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement." *Ashcroft v. Iqbal,* 556

U.S. 662, 696 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 557 (2007) (internal quotation marks omitted)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly,* 550 U.S. at 570). A claim is facially plausible if the plaintiff alleges factual content "that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged" and shows more than "a sheer possibility that a defendant has acted unlawfully." *Id.*

## ARGUMENT

### A. Plaintiffs Fail To Allege CFAM Violated the FDCPA

Plaintiffs' first cause of action is for a violation of the FDCPA in paragraph 23 and 24 of their Complaint. Compl. p. 8. In paragraph 23, Plaintiffs allege, in conclusory fashion, that CFAM violated the FDCPA. *Id.* In paragraph 24, Plaintiffs simply ask for damages for unspecified FDCPA violations. *Id. See* attached Exhibit B. Thus, it appears that the factual allegations supporting Plaintiffs' FDCPA must come from the paragraphs alleged before paragraphs 23-24.

*1. Plaintiffs' FDCPA claims have no merit*

To prevail on a FDCPA claim, a plaintiff must sufficiently allege that (1) he was the object of collection activity arising from a consumer debt as defined by the FDCPA, (2) the defendant is a debt collector as defined by the FDCPA, and (3) the defendant engaged in an act or omission prohibited by the FDCPA. *Johnson v. BAC Home Loans Servicing, LP*, 867 F.Supp.2d 766, 776 (E.D.N.C. 2011); *Dikun v. Streich,* 369 F.Supp.2d 781, 784–85 (E.D.Va. 2005) (*citing Fuller v. Becker & Poliakoff,* 192 F.Supp.2d 1361 (M.D.Fla.2002)). Plaintiffs have not properly alleged facts supporting the third element of this claim.

a. <u>Plaintiffs have not properly alleged that Defendant violated §1692e of the FDCPA.</u>

Plaintiffs allege the CFAM violated §1692e of the FDCPA. Compl. pp. 4-5, ¶16. Section 1692e of the FDCPA prohibits "false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. §1692(e). The Fourth Circuit has adopted the "least sophisticated consumer" standard to determine if a Section 1692e violation has occurred. *Chaudhry v. Gallerizzo,* 174 F.3d 394 (4th Cir.1999); *Stewart v. Bierman,* 859 F. Supp. 2d 754, 761 (D. Md. 2012) *aff'd sub nom. Lembach v. Bierman*, 528 F. App'x 297 (4th Cir. 2013). "[A]lthough Congress did not expressly require that any violation of § 1692e be material, courts have generally held that violations grounded in false representations must rest on material representations." *Stewart, 859 F. Supp. at 761 citing Warren v. Sessoms & Rogers,* 676 F.3d 365, 373–75 (4th Cir.2012).

Plaintiffs allege that Defendant violated §1692e(2)A and e(10) when the agency was sent to repossess their car informed them that it was being taken for their default on the auto loan (Compl. pp. 4-5), and violated §1692e(2)A, e(5) and e(10) by sending them a letter on November 10, 2014 concerning the debt on the car. (Compl. pp. 5-6).

Section 1692e(2)A of the FDCPA prohibits a "false representation of the character, amount, or legal status of any debt" *Warren v. Sessoms & Rogers, P.A.*, 676 F.3d 365, 374 (4th Cir. 2012), *as amended* (Feb. 1, 2012); however, "[a] statement cannot mislead unless it is material, ... a false but non-material statement is not actionable." *Id*.

There was nothing false in the communication between Plaintiffs and the repossession agent as a matter of law. Plaintiffs allege that they were told that they "owed an auto debt to the Defendant" and that "repossession was warranted" during this communication. Compl. pp. 4-5. Plaintiffs admit in their Complaint that they signed the Note. They also admits that the Note was

8

in default. A material term of the Note was that if they were in default the Hummer H2 could be repossessed. Plaintiffs claim that only Wells Fargo was entitled to repossession; however, during Plaintiff, Jason Vicks, First Bankruptcy when CFAM filed a Notice of Claim, his counsel did not object to the claim before the Chapter 13 Plan was confirmed. Furthermore, during the Second Bankruptcy, Plaintiff attempted to avoid the CFAM's Notice of Claim by asserting that Wells Fargo was the lien holder; yet the Court summarily denied his attempt at avoidance. His claim after these two Bankruptcies that CFAM could not enforce the terms of the Note strain credibility.

Section 1692e(5) proscribes a debt collector from threatening "to take any action that cannot legally be taken or that is not intended to be taken." *Fontell v. Hassett,* 870 F. Supp. 2d 395, 410 (D. Md. 2012).

As stated above, CFAM provided the Bankruptcy Court in its Proof of Claim that it was the holder of the Note given by Jason Vicks and MeKeisha Myles Vicks to Parks Automotive Inc. dba Parks Suzuki, that the Note was in default, and that repossession of the secured collateral (the Hummer H2) was a remedy for default. Furthermore, Plaintiffs admit to the default. As a matter of law, CFAM could repossess the Hummer H2; thus Plaintiffs' claim under 1692e(5) must also be dismissed as a matter of law.

Section 1692e(10) prohibits debt collectors from using "any false representation or deceptive means to collect or attempt to collect any debt." 15 U.S.C. § 1692e(10). Plaintiffs have not alleged how the attempt to repossess the Hummer H2 or the November 10 letter was false or deceptive other than their contention that CFAM could not collect on the note. However, as stated above Plaintiff, Jason Vicks had two opportunities in Bankruptcy Court to contest the

9

validity of CFAM lien on the Hummer H2 and either chose not to challenge CFAM's claim or challenged it and lost the argument to avoid CFAM's lien.

      b.    <u>Plaintiffs have not properly alleged that Defendant violated §1692g of the FDCPA.</u>

Plaintiffs also allege the CFAM violated §1692g of the FDCPA. Compl. pp. 5-6. Section 1692g of the FDCPA concerns the validation of debts covered by the act. 15 U.S.C. §1692(g). In this case, Plaintiffs have no claim against CFAM for a violation of § 1692g because his claim is barred by the statute of limitations.

Section 1692g(a) states in part that within *five days* "after the *initial communication* with a consumer in connection with the collection of any debt, a debt collector shall send the consumer a written notice containing a statement that . . . if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt . . . ."  15 U.S.C. § 1692g(a) (emphasis added).

Claims under the FDCPA must be brought "within one year from the date on which the violation occurred." 15 U.S.C. § 1692k(d). "[T]he limitations period for FDCPA claims begins from the date of the first violation, and subsequent violations of the same type do not restart the limitations period." *Fontell,* 870 F. Supp. 2d 395, 404. "Furthermore, 'new communications concerning an old claim do not start a new period of limitations.'" *Bey v. Shapiro Brown & Alt, LLP,* 997 F. Supp. 2d 310, 316 (D. Md. 2014) *aff'd*, 584 F. App'x 135 (4th Cir. 2014).  On Page 4 of their Complaint, Plaintiffs admit that they paid CFAM on the putative debt from 2012 through 2014. Despite this admission, Plaintiffs would have this Court believe that during that two year period, he had no communication with CFAM, written or oral that would initiate the written notice requirement of § 1692g.

10

In conclusion, Plaintiffs have failed to allege a claim against CFAM under the FDCPA; thus, the claim should be dismissed as a matter of law.

**B.      Plaintiffs have no claim under the North Carolina Debt Collections Practices Act.**

Plaintiffs' second cause of action is a violation of Article 2 of the North Carolina Unfair Trade Practices Act, also known as the North Carolina Debt Collectors Act ("NCDCA"), N.C.Gen.Stat. §§ 75–50 et seq.  The elements of a NCDCA claim are (1) an unfair act, (2) in or affecting commerce and (3) that has proximately caused plaintiff injury.  *Ross v. Washington Mut. Bank,* 566 F. Supp. 2d 468 (E.D.N.C. 2008) *aff'd sub nom. Ross v. F.D.I.C.,* 625 F.3d 808 (4th Cir. 2010).  In the context of the NCDCA, an unfair act includes the use of threats, coercion, harassment, unreasonable publication of the consumer's debt, deceptive representations, and unconscionable means. N.C.Gen.Stat. §§75-51 to 56.  *Davis Lake Cmty. Ass'n, Inc. v. Feldmann*, 138 N.C. App. 292, 296, 530 S.E.2d 865, 868 (2000).

In this case, Plaintiffs have not properly alleged that CFAM committed an unfair act. The Plaintiffs allege that CFAM violated the NCDCA in seven ways. Compl. pp. 9-10.  None of these alleged transgressions were sufficiently pled by Plaintiffs to survive a motion to dismiss.

>   a.      <u>Plaintiffs have not properly alleged that Defendant "us[ed] or threaten[ed] violence or any illegal means to cause harm to the person reputation or property of any person."</u>

There are no allegations in the Complaint concerning violence towards the Plaintiffs. Plaintiffs have not alleged how the repossession of his Hummer H2 caused harm to his physical person or reputation.  Plaintiffs' allegations for this violation can only be for the repossession itself.  As stated above, CFAM is the holder of the Note, the Note was secured by the Hummer H2, Plaintiffs defaulted on the debt, and repossession was a remedy in the Note for such a default.  Plaintiffs have failed to allege how the repossession was illegal.

11

> b. <u>Plaintiffs have not properly alleged that Defendant "falsely accus[ed] or threaten[ed] to accuse any person of fraud or any crime, or of any conduct that would tend to cause disgrace contempt or ridicule."</u>

Plaintiffs have not alleged that CFAM accused them of a crime or fraud at any time. Furthermore, they have made no specific or general allegations concerning any "disgrace, attempt, or ridicule" they suffered due to CFAM.

> c. <u>Plaintiffs have not properly alleged that Defendant "[made] or threatened to make false accusation to another person . . . that a consumer has not paid, or has wilfully refused to pay just debt"</u>

As stated above, Plaintiffs admit to their default on the Note. CFAM has demonstrated it's the holder of that Note in Jason Vicks' bankruptcies. Any communication of that fact, even to the agent that repossessed the Hummer H2 is not a violation of the NCDCA.

> d. <u>Plaintiffs have not properly alleged that Defendant "comminicat[ed] with the consumer other than in the name of the person making the communication, the collection agency and the person or business on whose behalf the collection agency is acting or to whom the debt is owed."</u>

In this allegation of a violation of the NCDCA, Plaintiffs cite from N.C.Gen.Stat. § 58-70-110(2) which is part of the North Carolina Collection Agency Act ("NCCAA"). However, N.C.Gen.Stat. § 75-54(1) of the NCDCA is similar to this provision in that it prohibits "[c]ommunicating with the consumer other than in the name (or unique pseudonym) of the debt collector and the person or business on whose behalf the debt collector is acting or to whom the debt is owed." For purposes of this 12(b)(6) motion, it is assumed that Plaintiffs are referring to N.C.Gen.Stat.75-54(1). "To prevail on a claim for [a] violation [of 75-54], one need not show deliberate acts of deceit or bad faith, but must nevertheless demonstrate that the act complained of 'possessed the tendency or capacity to mislead, or created the likelihood of deception.' " *Wilkes Nat. Bank v. Halvorsen*, 126 N.C. App. 179, 183, 484 S.E.2d 582, 585 (1997). Plaintiffs cannot plausibly allege in this action, that simply because a company by the name of "Associate

Asset Recovery" repossessed their vehicle that they were deceived as to who actually was the party taking the vehicle.

This is another exercise in artful pleading by the Plaintiffs. Plaintiffs allege at 11:30 p.m. on November 6, 2014, an agent/employee off CFAM "communicated" with them. Compl. pp. 4-5. There is no allegation of whether this "communication" was written and oral. However, Plaintiffs attempt at bootstrapping this allegation into a violation of the NCDCA must fail because they admit that "Associate Asset Recovery" communicated that it was Defendant CFAM that was having their vehicle repossessed. Plaintiffs have not alleged at all that CFAM was trying to deceive them by send "Associate Asset Recovery" to repossess the vehicle.

> e. <u>The NCDCA has no requirements concerning the initial and subsequent communications with a consumer.</u>

Plaintiffs allege that Defendants violated the NCDCA by failing to properly disclose information in its initial communications with the Plaintiffs. Compl. pp. 9-10. There is no requirement in the NCDCA concerning the nature of the initial or subsequent communication between a debt collector and the debtor. This claim must be dismissed.

> f. <u>Defendant did not falsely represent the "character, extent, or amount of [the] debt" in this case.</u>

In this allegation of a violation of the NCDCA, Plaintiffs cite from N.C.Gen.Stat. § 58-70-110(4) which is part of the NCCAA. However, N.C.Gen.Stat.75-54(4) of the NCDCA is similar to this provision in that it prohibits "falsely representing the character, extent, or amount of a debt against a consumer or of its status in any legal proceeding; falsely representing that the collector is in any way connected with any agency of the Federal, State or Local Government; or falsely representing the creditor's rights or intentions. N.C.Gen.Stat. § 75-54. As stated above, the public record in this case demonstrates that CFAM has demonstrated that it was assigned the

13

Note from Wells Fargo, Plaintiffs admit that they are in default on the Note, and the Note allows for repossession if they are in default. Plaintiffs had an opportunity in the First Bankruptcy to challenge the validity and amount of the debt and did not do so.

      g.      <u>Defendant did not falsely represent the "status and true nature of its services to Plaintiffs</u>

In this allegation of a violation of the NCDCA, Plaintiffs cite from N.C.Gen. Stat. 58-70-110(4) which is part of the NCCAA. However, N.C.Gen.Stat. § 75-54(7) of the NCDCA is similar to this provision in that it prohibits "[f]alsely representing the status or true nature of the services rendered by the debt collector or his business. N.C.Gen.Stat. § 75-54(7). There is no basis for this claim in the Complaint. Plaintiffs have alleged no facts in which CFAM represented itself anything other than as the holder of the Note secured by Plaintiffs Hummer H2. This claim must be dismissed as a matter of law.

**C.     Plaintiffs Have No Claim Under the North Carolina Unfair Trade Practices Act.**

Plaintiffs' third cause of action is for a violation of the North Carolina Unfair Trade Practices Act ("NCUTPA"). Compl. pp. 11-12. Plaintiffs' claim under the NCUTPA is entirely based upon a violation of the NCDCA. Compl. pp. 11. As argued above, Plaintiffs have no claim under the NCDCA; thus this claim must fail also.

**D.     Plaintiffs Have No Claim Under N.C. Gen. Stat. 25-9-601**

The Fourth Cause of Action in the Complaint asserts a claim for "noncompliance with repossession of vehicle without a security interest." Compl. pp. 12. In support of this claim, Plaintiffs allege that Defendant violated N.C.Gen.Stat. § 25-9-601. *Id.* However, this part of the Uniform Commercial Code ("UCC") includes 28 separate sections, each with numerous subparts. *See* N.C.Gen.Stat. §§ 25–9–601 to 628. Plaintiffs' complaint fails to state which provision or provisions of those 28 sections Defendant allegedly violated. Further, the remedy

14

provision cited by Plaintiffs create liability only for "any loss caused by a failure to comply with this Article." *See* N.C. Gen. Stat. § 25–9–625.

Additionally, Plaintiffs' claim that defendant violated UCC Article 9 is based on a faulty premise. In support of this claim Plaintiffs allege that CFAM was not the secured creditor at the time of the repossession. *Id*. As a matter of public record, CFAM established itself as the holder of the Note in Jason Vicks' bankruptcies. The facts in the complaint reveal that the Plaintiffs admit that they were in default on the Note at issue. Compl. pp. 4. UCC Article 9 leaves it to the parties to define default and provides that once default occurs, the secured party has the right to take possession of the collateral. *See* N.C. Gen. Stat. § 25–9–609(a)(1). Accordingly, the Plaintiffs were in default at the time of repossession and CFAM could not have violated Section 9 of North Carolina's UCC. Therefore Plaintiffs' claim must be dismissed.

## CONCLUSION

Based on the foregoing, CFAM, Inc., by counsel, requests the Court to enter an order granting its motion to dismiss, dismissing Plaintiffs' Complaint with prejudice, awarding CFAM the costs incurred in this action, and granting such other relief as the Court deems just and proper.

Respectfully submitted this 2 of February, 2015.

BROCK & SCOTT, PLLC

/s/Franklin L. Greene
Franklin Greene, NC Bar #37896
Brock & Scott, PLLC
5121 Parkway Plaza Blvd.
Charlotte, NC 28217
704-643-0290 (Phone)
704-553-7225 (Fax)
Franklin.Greene@BrockandScott.com
*Attorney for CFAM, Inc.*

15

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:14-cv-00700-RJC

JASON VICKS
MEKEISHA VICKS

      Plaintiffs,

vs.

CFAM FINANCIAL SERVICES, LLC.

      Defendant.

**CERTIFICATE OF SERVICE**

      I hereby certify that on February 2, 2015 a copy of the foregoing pleading, with any and all attachments, was filed electronically with the clerk of court via ECF and served via First-Class Mail, postage prepaid, addressed to:

Jason Vicks
Makeisha Vicks
2002 Master Gunner Road
Indian Trial, North Carolina 28079

    /s/ Franklin Greene
Franklin Greene, NC Bar # 37896
Brock & Scott, PLLC
5121 Parkway Plaza Blvd.
Charlotte, NC 28217
704-643-0290 (Phone)
704-553-7225 (Fax)
Franklin.Greene@BrockandScott.com
*Attorney for CFAM, Inc.*

16