**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:14-cv-700-RJC-DSC**

| | |
|---|---|
| JASON VICKS, et. al., ) <br> ) <br> **Plaintiffs,** ) <br> ) <br> v. ) <br> ) <br> CFAM FINANCIAL SERVICES, LLC, ) <br> ) <br> **Defendants.** ) <br> ) | **ORDER** |

**THIS MATTER** comes before the Court on Defendant's Motion to Dismiss and Memorandum in Support, (Doc. Nos. 8, 9); the Magistrate Judge's Memorandum and Recommendations ("M& R"), (Doc. No. 13); Plaintiffs' Objection to the M&R, (Doc. No. 14); and Defendant's Reply to Plaintiffs' Objection, (Doc. No. 15).

In the M&R, the Magistrate Judge recommended that Defendant's Motion to Dismiss be granted. Plaintiffs filed Objections to the M&R of the Magistrate Judge on May 1, 2015, and Defendant filed a Reply to Plaintiffs' Objections on May 18, 2015. It is ripe for review.

**I.  BACKGROUND**

The pro se Plaintiffs assert claims under the Fair Debt Collection Practices Act ("FDCPA"), the North Carolina Debt Collection Act ("NCDCA"), the North Carolina Unfair and Deceptive Trade Practices Act ("NCUDTPA") and for "Noncompliance with Repossession of Vehicle Without A Security Interest." On April 23, 2007, Plaintiffs executed a promissory note ("Note") in favor of Parks Automotive, Inc. d/b/a Parks Suzuki ("Parks"), evidencing a loan for the purchase a 2003 Hummer H2. The principal amount of the Note was $36,943.00. The Note called for sixty-six monthly payments of $812.17 beginning on May 23, 2007.

1

In paragraph 2(c) of page two of the Note, Plaintiffs gave the vehicle as collateral for the loan. Paragraph 3(d) of page two of the Note provided notice that the vehicle may be repossessed if Plaintiffs defaulted on the loan. Parks assigned the Note to Wells Fargo (Doc. No. 1-A). Exhibits attached to the Complaint show that Wells Fargo recorded its lien with the North Carolina Department of Motor Vehicles on May 21, 2007 (Doc. No. 1-B). Wells Fargo transferred the Note to Defendant CFAM on June 12, 2012. Plaintiffs admit that they made payments to CFAM and ultimately defaulted on the Note.

Plaintiff Jason Vicks filed for Chapter 13 Bankruptcy in the Western District of North Carolina on June 26, 2012. See In re Vicks, Bankruptcy Case No. 3:12-bk-32648 (2012) ("First Bankruptcy"). On January 4, 2013, CFAM made an appearance and requested notice in the proceeding. On February 22, 2013, CFAM filed a Notice of Claim with the Bankruptcy Court. The Notice of Claim included a copy of the Note, Certificate of Title, Payment History, Limited Power of Attorney, and Bill of Sale. Vicks, who was represented by counsel, made no objection to CFAM claiming an interest in the vehicle. On February 15, 2013, the Court confirmed a Chapter 13 Plan where Vicks would pay $3,250 per month to his creditors. On April 12, 2013, the Bankruptcy Court dismissed the Petition after the Trustee objected to the Chapter 13 Plan based upon Vicks failure to file his 2010 and 2011 income tax returns. Before the dismissal, Vicks paid $3,350 to the Trustee of the bankruptcy estate. CFAM received $2,471.10.

On April 23, 2014, Vicks filed another Chapter 13 Bankruptcy Petition in the Western District of North Carolina. See In re Vicks, Bankruptcy Case No. 3:14-bk-30679 (2014) ("Second Bankruptcy"). Vicks proceeded pro se. On July 8, 2014, CFAM again made an appearance and requested notice in the proceeding. CFAM also objected to Vicks's bankruptcy plan because "[his Chapter 13] plan proposes to avoid CFAM's lien, without giving any

explanation as to why the lien is voidable." Id. Vicks responded that Wells Fargo had charged off the loan on his credit reports and that CFAM was not registered as a debt collector under North Carolina law. Id. On August 18, 2014, the Bankruptcy Court sustained CFAM's objection to the Chapter 13 plan. On November 11, 2014, Vicks's second Bankruptcy Petition was dismissed.

According to the Complaint, CFAM was licensed by the North Carolina Department of Insurance as a debt collector on November 5, 2014 (Doc. No. 1 at 4). On November 7, CFAM repossessed the vehicle following an unsuccessful attempt on November 6. Id. at 4-5. On November 10, 2014, CFAM sent Vicks a letter allowing him thirty days to dispute the debt. Id. at 5. On November 11, 2014, CFAM sent him another letter informing him of its intent to sell the vehicle. Id. at 7.

On December 17, 2014, Plaintiffs filed their Complaint. On February 2, 2015, Defendant filed its Motion to Dismiss, (Doc. No. 8). Plaintiffs' claims are based upon their theory that Defendant had no right to repossess the vehicle. The Magistrate Judge recommended that this Court grant Defendant's Motion to Dismiss.

## II. STANDARD OF REVIEW

The Federal Magistrate Act provides that a district court "shall make a de novo determination of those portions of the report or specific proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); Camby v. Davis, 718 F.2d 198, 200 (4th Cir. 1983). *De novo* review is not required by the statute when an objecting party makes only general or conclusory objections that do not direct the court to a specific error in the magistrate judge's recommendations. Orpiano v. Johnson, 687 F.2d 44 (4th Cir. 1982). Further, the statute does not on its face require any review at all of issues that are not the subject of an objection. Thomas v. Arn, 474 U.S. 140, 149 (1985); Camby, 178 F.2d at 200. Nonetheless, a district judge is

responsible for the final determination and outcome of the case, and accordingly this Court has conducted a careful review of the Magistrate Judge's M&R.

## III. DISCUSSION

Plaintiffs object to the Recommendation's granting of Defendant's Motion to Dismiss. Specifically, Plaintiffs object to these findings of fact and law made in support of the Recommendation: (a) the Recommendation's failure to consider the North Carolina "negotiation" statute, N.C.G.S. § 25-3-201; (b) the Recommendation's failure to recognize CFAM's statements as constituting actionable FDCPA violations; (c) the Recommendation's failure to find CFAM's actions without a collection agent permit as constituting actionable North Carolina state violations; (d) the Recommendation's failure to find that CFAM falsely represented its rights; and (e) the Recommendation's failure to find that CFAM's repossession is actionable. (See Doc. 14 at 1-6).

### A. "Negotiation" under N.C.G.S.§ 25-3-201

Plaintiffs object to the Recommendation's failure to consider the "negotiation" statute under N.C.G.S.§ 25-3-201, arguing that CFAM is not the holder of the Note. Under N.C.G.S.§ 25-3-201, "if an instrument is payable to an identified person, then negotiation requires transfer of possession of the instrument and its endorsement by the holder." Id.

Here, Plaintiffs argue that the Note Vicks signed with Parks Automotive was negotiated to Wells Fargo, and that there is no negotiation to CFAM. (Doc. No. 14 at 3). However, this argument ignores the Bankruptcy Court's ruling on holdership, to which Jason Vicks failed to object, as well as the documentation showing the transfer from Wells Fargo to CFAM in his Bankruptcy. (Doc. No. 12-A at 2). The Bankruptcy Court found that CFAM was the holder of the Note originated by Parks, that the H2 secured the Note, and that CFAM had the right to

repossess the H2. Id. In his First Bankruptcy, Jason Vicks was represented by counsel and had the opportunity to challenge CFAM's holdership of the Note, but failed to do so. (Doc. No. 12-B at 2). Therefore, this Court finds that CFAM is the secured creditor.

B.     FDCPA Claim

Plaintiffs object to the Recommendation's failure to find that CFAM made false statements constituting a FDCPA claim. To prevail on a FDCPA claim, a plaintiff must sufficiently allege that (1) he was the object of collection activity arising from a consumer debt as defined by the FDCPA, (2) the defendant is a debt collector as defined by the FDCPA, and (3) the defendant engaged in an act or omission prohibited by the FDCPA. Johnson v. BAC Home Loans Servicing, LP, 867 F.Supp.2d 766, 776 (E.D.N.C. 2011); Dikun v. Streich, 369 F.Supp.2d 781, 784–85 (E.D.Va. 2005) (citing Fuller v. Becker & Poliakoff, 192 F.Supp.2d 1361 (M.D.Fla.2002)).

Plaintiffs contend that CFAM violated the FDCPA by repossessing the Hummer H2. Their only objection to the M&R's dismissal of the FDCPA claims is that CFAM could not take the actions it did if it were not the Note's holder. (Doc. No. 14 at 4). However, Plaintiffs have not alleged any facts supporting the third element of this claim. As discussed above, CFAM had established that it was the holder of the Note at the time of these actions. (Doc. No. 12-A at 2). This Court finds that Defendant was entitled to repossess the vehicle according to the terms of the Note and thus agrees with the Magistrate Judge's recommendation. (Doc. No. 8 at 5).

C.     Lack of Collection Agent Permit

Plaintiffs object to the Recommendation's failure to find that CFAM's repossession actions without a collection agent permit constitute actionable conduct under North Carolina state law. (Doc. No. 14 at 5). Under N.C.G.S. § 58-70-150, in any action initiated by a debt buyer, "a copy

5

of the writing or other writing establishing that the plaintiff is the owner of the debt" must be attached to the complaint or claim. Id. Additionally, this same statute requires that "each assignment or other writing evidencing the transfer of ownership must contain the original account number of the debt purchased and must clearly show the debtor name associated with that account number" in any action initiated by a debt buyer. Id.

Plaintiffs claim that there is no affidavit or proof of a transfer to CFAM. They assert that CFAM violated N.C.G.S. § 58-70-1 by not submitting proper documentation with its claim of holdership. (Doc. No. 14 at 6). Plaintiffs also argue a violation under § 58-70-1 for CFAM collecting a debt without a license and under § 58-70-150 for pursuing a cause of action without attaching documentation required by the NCCAA. Id.

However, CFAM has already made the proper submission of "a copy of the writing or other writing establishing that the plaintiff is the owner of the debt" in Jason Vicks's bankruptcy. (Doc. No. 9-B). The original account number and clear showing of the debtor name associated with that number were also attached to the proof of claim. Id. at 2. If such documentation was not attached to the CFAM's proof of claim filed in Jason Vicks's bankruptcy, then he failed to object to it. Plaintiffs' argument under N.C.G.S. § 58-70-150 also relates to "causes of action" and not to Notices of Claims in Bankruptcy or repossessions. See In re Skerlak, 2014 WL 1153972, at *3 (Bankr. M.D.N.C. Mar. 20, 2014) (refusing to extend the provisions of Chapter 58, Section 70 of the North Carolina General Statutes to Notice of Claims). Further, Plaintiffs attempt to amend their complaint to include claims under N.C.G.S. § 58-70-1 without obtaining consent from CFAM or requesting leave of court. Therefore, this Court finds no actionable conduct under N.C.G.S. § 58-70-150.

D. CFAM's False Representation

Plaintiffs object to the Recommendation's finding that the Note was transferred to CFAM. Plaintiffs assert that the record provides no evidence that the Note was transferred to CFAM. (Doc. No. 14 at 6). However, again, this claim is based upon the mistaken belief that Defendant did not have a right to repossess the vehicle. (See Doc. No. 12-A at 2). The Bankruptcy Court found that CFAM was the holder of the Note and had the right to repossess the H2. Id. Therefore, this Court finds that the Note originated by Parks was transferred to CFAM.

E. CFAM's Lack of Security Interest

Finally, Plaintiffs object to the Recommendation's failure to find that CFAM's repossession is actionable because it held no security interest. Plaintiffs contend that a secured party has certain rights after a default, including the right for a secured party to "reduce a claim to judgment, foreclose, or otherwise enforce the claim, security interest, or agricultural lien by any available judicial procedure." (Doc. No. 14 at 6). Plaintiffs argue that, based on this, they properly pled that CFAM was not a secured creditor. Id. However, as CFAM established at Vicks's bankruptcy, it is the holder of the Note. (Doc. No. 12-A at 2). Therefore, CFAM held a security interest in the H2 and validly repossessed the vehicle.

IV. CONCLUSION

Therefore, this Court **adopts** the findings of fact and conclusions of law specified in the Magistrate Judge's M&R.

**IT IS, THEREFORE, ORDERED** that:

1. Defendant's Motion to Dismiss, (Doc. 8), is **GRANTED;** and

2. The Clerk of Court is directed to close this case.

Signed: June 3, 2015

Robert J. Conrad, Jr.
United States District Judge